**Veronico Blas Almario KALAW; Eleanor Lu Dalisay, Petitioners,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Florencia Garcia REVILLA, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Anastacia MIRANDA–GONZALEZ, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 97–70106, 97–70294, 97–70333.

United States Court of Appeals, Ninth Circuit.

Submitted July 10, 1997.*

Decided Dec. 1, 1997.

---

* The panel finds two of the consolidated cases, *Miranda–Gonzalez v. INS* and *Kalaw v. INS*, appropriate for submission without oral argument pursuant to 9th Cir. R. 34–4 and Fed. R.App. P. 34(a). *Garcia Revilla v. INS* was orally argued before the panel on July 10, 1997.

Kelly Giles and Michael J. Gurfinkel, Glendale, CA, for petitioner, Garcia Revilla.

Kimberly R. Furman, Korenberg, Abramowitz & Feldun, Encino, CA, for petitioners, Kalaw, et al.

Wendy S. LeStarge, Stender & Larkin, Phoenix, AZ, for petitioner, Miranda–Gonzalez.

Laura A. Smith, Alice E. Loughran, and Michelle R. Slack, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before: CANBY and THOMAS, Circuit Judges, and KING,** Senior U.S. District Judge.

** Honorable Samuel P. King, Senior United States District Judge for The District of Hawaii, sitting by designation.

1. Pub.L. No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996), *as amended by* the Extension of Stay in United States for Nurses Act, Pub.L. No. 104–302, 110 Stat. 3656 (Oct. 11, 1996).

THOMAS, Circuit Judge:

In these consolidated petitions, we consider the effect of the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") on our jurisdiction to review the Attorney General's discretionary decisions regarding suspension of deportation. Because the transitional rules removed direct judicial review of discretionary decisions made by the Attorney General within the prescribed time limits, we dismiss the petitions for lack of jurisdiction.

I

Prior to passage of IIRIRA,[1] parties who wished to appeal any decision of the Board of Immigration Appeals ("BIA") would file a petition for review in the court of appeals for the circuit in which the administrative proceedings had been held. *See* Immigration and Nationality Act ("INA") § 106(a) (formerly codified at 8 U.S.C. § 1105a).

IIRIRA dramatically altered this court's jurisdiction to review final deportation and exclusion orders. It introduced sweeping changes into our immigration laws, including the specific repeal of the judicial review procedures previously provided under INA § 106. IIRIRA's replacement section for judicial review, new INA § 242, purports to vest the BIA with final appellate jurisdiction for most INS deportation proceedings. *See* IIRIRA § 306 (now codified at 8 U.S.C. § 1252).[2] The scope and validity of section 242 is not before us on these consolidated petitions. At issue is the nature and scope of judicial review afforded by IIRIRA's "transitional rules."

The effective date for the new jurisdictional provisions of INA § 242 was "the first day of the first month beginning more than 180 days" after IIRIRA's enactment. *See* IIRIRA § 309(a) (describing general effective dates for the chapter).[3] IIRIRA was enact-

2. IIRIRA also merged deportation and exclusion proceedings into a new and broader category entitled "removal proceedings." *See generally* IIRIRA § 304.

3. "Except as provided in this section and sections 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) of this division, this subtitle and the amendments made by this subtitle shall take effect on the first

ed on September 30, 1996. Therefore, the effective date for the relevant IIRIRA provisions was April 1, 1997.

■ IIRIRA § 309(c) specifically addressed deportation and exclusion proceedings that were pending before the April 1, 1997, effective date. These proceedings are to be governed by special "transitional changes in judicial review" that apply to all final orders of deportation or exclusion entered after October 30, 1996.[4] *Narayan v. INS,* 105 F.3d 1335 (9th Cir.1997). Thus, as to cases in which a final deportation or exclusion order was filed on or before October 30, 1996, the INA as it was codified prior to the passage of IIRIRA applies, including the judicial review procedures specified in INA § 106. As to cases in which a final deportation or exclusion order was filed after October 30, 1996, and which were pending before April 1, 1997, IIRIRA's transitional rules apply. IIRIRA's permanent provisions pertain to removal proceedings initiated by the INS on or after April 1, 1997.[5]

■ The consolidated petitions before us involve cases in which a final order of deportation was filed in the transition window between October 30, 1996 and April 1, 1997. Thus, the transitional rules apply. *Miranda–Gonzalez v. INS* provides a good example of how IIRIRA's transitional rules work. In *Miranda–Gonzalez,* the final order of deportation was issued on March 6, 1997, but her petition for review was not filed until April 2, 1997. The fact that her petition was filed after IIRIRA's effective date is superfluous. In determining which rules apply, the determinative date is the final order of deportation or exclusion, not the petition for review. Thus, the transitional rules apply to her petition.

Similarly, because the BIA issued final decisions concerning Kalaw's and Garcia Revilla's appeals on January 15, 1997, and March 6, 1997, respectively, IIRIRA's transitional rules apply to their cases.

## II

Congress clearly intended to limit judicial review over the discretionary decisions of the Attorney General and her delegates during the transitional period. The relevant transitional provision, IIRIRA § 309(c)(4)(E), provides that "there shall be no appeal of any discretionary decision" under INA §§ 212(c), 212(h), 212(i), 244 or 245. Exactly what constitutes a discretionary decision is not defined in the IIRIRA or the INA.

At issue in the consolidated petitions is direct judicial review of the Attorney General's discretionary decision to deny suspension of deportation under INA § 244, recodified at 8 U.S.C. § 1229(b). The plain language of IIRIRA precludes our direct review of the Attorney General's discretionary decisions. However, assessing some of the aspects of statutory eligibility for suspension of deportation requires application of law to factual determinations. As to those elements of statutory eligibility which do not involve the exercise of discretion, direct judicial review remains.

Specifically, section 244 permitted the Attorney General to grant an alien's application for suspension of deportation if the alien:

(1) has been physically present in the United States for a continuous period of not less than seven years immediate-

---

day of the first month beginning more than 180 days after the date of enactment of this Act (in this title referred to as the 'title III–A effective date')." IIRIRA § 309(a), found at 8 U.S.C. § 1101 (History).

**4.** Pursuant to 8 C.F.R. § 241.31, a deportation order becomes final "upon dismissal of an appeal by the Board of Immigration Appeals, upon waiver of appeal, or upon expiration of the time allotted for an appeal when no appeal is taken; or, if such an order is issued by the Board or approved by the Board upon certification, it shall become final as of the date of the Board's deci-

sion." Final Order of Deportation, 62 Fed.Reg. 10382 (1997) (to be codified at 8 C.F.R. § 241.31). The phrase "final order of deportation" also includes a BIA denial of a motion to reopen deportation proceedings. *Sarmadi v. INS,* 121 F.3d 1319, 1321–22 (9th Cir.1997).

**5.** Because Congress expressly declared the applicability of the relevant transitional rules to pending cases, we need not apply the judicial default rules discussed in *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280–81, 114 S.Ct. 1483, 1505–06 (1994).

ly preceding the date of such application;

(2) proves that during all of such period he was and is a person of good moral character; and

(3) is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (now repealed).[6]

█ The first eligibility requirement, continuous physical presence, must be determined from the facts, not through an exercise of discretion. Either the petitioner has been continuously present in the United States for seven years or the petitioner has not. There are legal standards guiding this inquiry, *see, e.g., Rosenberg v. Fleuti,* 374 U.S. 449, 462, 83 S.Ct. 1804, 1812, 10 L.Ed.2d 1000 (1963) (brief, casual, and innocent departures from the United States do not break a period of continuous physical presence), and we have reversed the BIA's determination when it applied the wrong standard, *see, e.g., Castrejon–Garcia v. INS,* 60 F.3d 1359 (9th Cir.1995); *Kamheangpatiyooth v. INS,* 597 F.2d 1253 (9th Cir.1979). Moreover, we review whether an alien satisfies the continuous physical presence requirement for substantial evidence rather than abuse of discretion, *see Hernandez–Luis v. INS,* 869 F.2d 496, 498–99 (9th Cir.1989), further suggesting the inquiry is more factual than discretionary. Thus, the transitional rules of judicial review provided in IIRIRA § 309(c)(4)(E), *reprinted in* 8 U.S.C. § 1101 notes, do not remove appellate jurisdiction over an alien's challenge to the BIA's denial of an application for suspension of deportation solely on this ground.

█ The second requirement, "good moral character," presents a more complex question. 8 U.S.C. § 1101(f) lists certain catego-

ries of aliens who are per se considered not to have good moral character, including habitual drunkards, *id.* § 1101(f)(1), anyone who testified falsely to obtain benefits under the INA, *id.* § 1101(f)(6), and anyone who at any time has been convicted of an aggravated felony, *id.* § 1101(f)(8), among others. Whether a petitioner falls into one of these per se categories depends upon findings of fact, which we review for substantial evidence. *Singh v. INS,* 94 F.3d 1353, 1358 (9th Cir.1996). If the BIA finds the alien falls into a per se category, the BIA lacks discretion to grant the suspension of deportation application. *See* INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (now repealed) (Attorney General may grant suspension of deportation only for aliens who meet the statutory eligibility criteria); new INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1) (same). *See also De la Cruz v. INS,* 951 F.2d 226, 228 (9th Cir.1991) (BIA has no discretion to grant voluntary departure where alien fails to meet the statutory requirements for such relief). In short, determination of per se ineligibility is not a discretionary matter. Consequently, direct judicial review is available under the transitional rules of a BIA denial of eligibility for suspension of deportation based on application of the per se exclusion categories.

█ Apart from the per se categories, however, whether an alien has good moral character is an inquiry appropriate for the Attorney General's discretion. *See Torres–Guzman v. INS,* 804 F.2d 531, 533 (9th Cir. 1986) (suggesting moral character determinations should be reviewed for an abuse of discretion). This makes sense-whether someone has good moral character is almost necessarily a subjective question, dependent as it is upon the identity of the person or entity examining the issue. Thus, aside from the applicability of any per se category, IIRIRA's transitional rules prohibit direct judicial review of the question of good moral character.

---

6. The eligibility requirements for a cancellation of removal were also changed by IIRIRA. *See* INA § 240A, codified at 8 U.S.C. § 1229(b) (requiring a continuous physical presence of 10 years, good moral character, no convictions un- der 8 U.S.C. §§ 1182(a), 1227(a)(2), or 1227(a)(3), and a showing of *exceptional and extremely unusual hardship* to a spouse, parent, or child who is a U.S. citizen or lawful permanent resident.) (Emphasis added).

■ Determination of the third statutory requirement, "extreme hardship," is clearly a discretionary act. The language of INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (now repealed), itself commits the determination to "the opinion of the Attorney General." *See also Carnalla–Munoz v. INS*, 627 F.2d 1004, 1006 (9th Cir.1980) ("Extreme hardship is by the express terms of the statute a discretionary determination."). Thus, the transitional rules operate to remove direct judicial review of BIA determinations of "extreme hardship."

■ Even if all three of these statutory criteria are met, the ultimate grant of suspension is wholly discretionary. *See* INA § 244(a), 8 U.S.C. § 1254(a) (now repealed) ("the Attorney General *may, in his discretion, suspend deportation* [if the alien meets certain statutory requirements].") (emphasis added). Satisfying the statutory eligibility requirements for consideration of suspension of deportation does not mean that the application will automatically be granted. *INS v. Yang*, — U.S. —, —————, 117 S.Ct. 350, 352–53, 136 L.Ed.2d 288 (1996); *see also INS v. Rios–Pineda*, 471 U.S. 444, 446, 105 S.Ct. 2098, 2100, 85 L.Ed.2d 452 (1985) ("Even if these prerequisites are satisfied, it remains in the discretion of the Attorney General to suspend, or refuse to suspend, deportation.").

■ Thus, if the Attorney General decides that an alien's application for suspension of deportation should not be granted as a matter of discretion in addition to any other grounds asserted, the BIA's denial of the alien's application would be unreviewable under the transitional rules. The BIA need not even address the statutory requirements if the application is denied as a matter of pure discretion. *See Rios–Pineda*, 471 U.S. at 449, 105 S.Ct. at 2102 ("[I]f the Attorney General decides that relief should be denied as a matter of discretion, he need not consider whether the threshold statutory eligibility requirements are met.").

Therefore, under IIRIRA's transitional rules, there is no direct judicial review of the Attorney General's ultimate decision not to suspend deportation proceedings. The transitional rules also preclude direct judicial review of the BIA's determinations of the threshold eligibility requirements of "extreme hardship" and the discretionary determination of "good moral character." Judicial review remains as to the "continuous physical presence" precondition and the per se categories for excluding eligibility for failure to possess "good moral character." The question of the scope of habeas corpus review of BIA decisions is not before us, and we express no opinion as to it.

### III

■ Kalaw also contends that IIRIRA's attempt to strip this court of jurisdiction over discretionary decisions of the Attorney General is unconstitutional because it deprives the petitioner of his due process rights and violates separation of powers. We rejected a similar argument in *Duldulao v. INS*, 90 F.3d 396 (1996), which considered companion legislation to IIRIRA (the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996)). *Duldulao*'s logic is equally applicable to IIRIRA's transitional rules. A jurisdictional statute, such as the portions of IIRIRA that are at issue in these cases, "usually takes away no substantive right but simply changes the tribunal that is to hear the case." *Landgraf*, 511 U.S. at 274, 114 S.Ct. at 1502 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916)).

### IV

■ Applying these principles to Garcia Revilla's case, it is clear we lack jurisdiction over her petition for review. The BIA declined to suspend deportation in her case because it believed she had failed to satisfy the "extreme hardship" test, an inquiry expressly committed to the Attorney General's discretion. *See* INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (now repealed). Accordingly, the transitional rules apply to remove our jurisdiction to review the BIA's decision regarding the existence of extreme hardship. More importantly, the BIA alternatively denied Garcia–Revilla's application as a matter of discretion. As the ultimate determination of whether to grant an alien's application for

suspension of deportation is clearly consigned to the discretion of the Attorney General, we lack jurisdiction to review the BIA's denial.

Similarly, IIRIRA's transitional rules prevent us from reviewing the merits of the petitions for review submitted by Miranda–Gonzalez and Kalaw. The BIA also declined to suspend deportation in these cases because it believed the petitioners failed to establish the requisite "extreme hardship," an inquiry expressly committed to the Attorney General's discretion. Thus, because the transitional rules apply to the petitions, we are without jurisdiction to review the BIA's decisions. None of the three petitioners has presented a substantive claim of deprivation of a constitutional right, so we are not presented with the question of judicial power to review such a claim.

**PETITIONS DISMISSED.**