**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0103n.06

No. 09-4055

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 10, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MARIA ISABEL REYES;<br>EFREN SALINAS REYES, | ) | |
| | ) | |
| Petitioners-Appellants, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

BEFORE:  SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.**  Maria Isabel Reyes and Efren Salinas Reyes, natives and citizens of Mexico, petition this court for review of the Board of Immigration Appeals' denial of their request for cancellation of removal.  We are sympathetic with the petitioners' situation.  However, because none of the exceptions to the statutory preclusion of review of such a decision is present, this court lacks the authority to review the denial of cancellation of removal in this case.

**I.**

Maria Isabel Reyes entered the United States without inspection on March 28, 1993, along with her two children, Eugenia and Efren, who were ages two and three respectively at that time. Maria's husband, also a native and citizen of Mexico, had previously entered the United States

illegally on October 26, 1991.[1]  Upon entering the country, Maria and her family first went to

Chicago, Illinois, but they later moved to Battle Creek, Michigan in 1995 and remained there until

their detection in 2005.  Maria and her husband also have two other children, Osmara and Abraham,

who were born in the United States on April 11, 1997, and October 16, 1998, respectively, and are

thus United States citizens.  Removal proceedings were initiated against Maria, her husband, and her

non-citizen children after Efren briefly entered into Canada for dinner while on a football trip to

Detroit, Michigan.  Efren was unable to reenter the United States because he was not a citizen, but,

after being detained in Canada for a short time, was eventually paroled back into the country.

On December 23, 2005, the petitioners, Maria and Efren, were served with Notices to

Appear.[2]  Upon their appearance, they both conceded their removability, but Maria filed an

application for cancellation of removal.  Efren lacked the necessary qualifying citizen or resident

relative, so his application for cancellation of removal was continued pending the outcome of his

mother's request—in other words, Maria would serve as Efren's qualifying relative if she was

granted cancellation of removal and legal-permanent-resident status.  In the alternative, both

petitioners requested voluntary departure.  Maria based her request for cancellation of removal

largely on the conditions of the village in Mexico to which she and her children would return, her

---

[1]Maria's husband was also ordered removed.  However, his case was not combined with Maria's and her children's; he was deemed ineligible for cancellation because he had a misdemeanor domestic violence conviction.

[2]Maria, Efren, and Eugenia were all involved in removal proceedings and received a joint hearing.  However, Eugenia's appeal has not been combined with her mother's and brother's.

family's involvement in the Battle Creek community, and her daughter Osmara's need for special instruction for her reading difficulties and alleged dyslexia.

Various individuals testified to Osmara's struggles in school and the instruction she was receiving from the Binda Dyslexia Center, which, according to the testimony, was really helping Osmara's reading skills. Though these individuals testified that they worried Osmara might regress if she did not continue her tutoring, they all acknowledged that she had never been formally diagnosed with dyslexia and that prior to starting the tutoring her standardized testing results showed that her reading comprehension had "met standards." Maria also testified at these removal proceedings, claiming that she would have to take her citizen children back to Mexico with her if she was ordered removed because there was no one in the United States to care for them. In addition, Maria testified that if removed she and her family would have to return to Jose Maria Morelos, the town where she grew up and where her mother lives.[3] Maria explained that Jose Maria Morelos had limited employment opportunities and offered schooling only through the sixth grade. She also noted that if her family returned there they would have to live in her mother's home, which had only three rooms, dirt floors, drinking water only two hours a day, insufficient heat, and no air conditioning.

Ultimately, the IJ denied Maria's request for cancellation of removal. In her written decision, the IJ explained that an alien is eligible for cancellation of removal if he or she:

---

[3]Though Maria stated that this is where she believed her family would return, she also acknowledged that she does have relatives in other locations in Mexico.

(1) has been continuously physically present in the United States for not less than ten years immediately preceding the date of such application; (2) has been a person of good moral character during that ten year period; (3) has not been convicted of an offense under Section 212(a)(2), 237(a)(2), or 237(a)(3) of the [INA]; (4) establishes that removal would result in exceptional and extremely unusual hardship to the alien's United States citizen or lawful permanent resident spouse, parent, or child; and (5) is entitled to the relief as a matter of discretion.

*See* 8 U.S.C. § 1229b(b)(1). The IJ found that there was "no issue" as to whether Maria established the requisite ten years physical presence, focusing instead on whether she established that her qualifying relatives—her United States citizen children—would suffer exceptional and extremely unusual hardship if she were removed, that she had been a person of good moral character, and that she was entitled to relief as a matter of discretion. Though the IJ did not doubt that Maria's qualifying relatives would suffer hardship, the IJ found that Maria had only demonstrated "the hardship that is normally or generally existent when an individual or alien is removed from the United States," and not any hardship "substantially beyond" that. Further, the IJ found that Maria "lack[ed] good moral character because she repeatedly represented herself to be a United States citizen (having knowledge that she was not a citizen) to obtain employment in the United States." Accordingly, the IJ concluded that Maria was "not entitled to a favorable exercise of discretion in considering her application for cancellation of removal," and ordered petitioners be removed to Mexico.[4]

---

[4]The IJ also denied petitioners' alternative requests for voluntary departure because they failed to demonstrate their eligibility for this form of relief. The IJ found that petitioners failed to present any travel documents sufficient to ensure their lawful entry into Mexico, or to produce any evidence showing that they have the financial means to leave the United States voluntarily.

On appeal to the Board of Immigration Appeals ("BIA"), petitioners challenged the IJ's determination in regard to the hardship and good moral character requirements for cancellation of removal. However, the BIA found no error in the IJ's denial of cancellation of removal. The BIA "agree[d] with the [IJ's] conclusion that [Maria] has failed to establish the requisite hardship to her younger two children." In addition, in regard to the good moral character determination, the BIA explained that "[i]t is not necessary for [Maria] to have been convicted of falsely claiming to be a United States citizen or to have been found to have given false testimony," but rather "it is sufficient for the [IJ] to have found that this factor weighs against a finding of good moral character as a matter of discretion." Therefore, the BIA dismissed petitioners' appeal, affirming the IJ's order of removal.[5] Maria and Efren now challenge this order of removal.

**II.**

Judicial review of cancellation-of-removal determinations made by the BIA is explicitly precluded by 8 U.S.C. § 1252(a)(2)(B)(i), which provides that "no court shall have jurisdiction to review any judgment regarding the granting of relief under section . . . 1229b . . . of this title." *See also Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007). However, we do have jurisdiction to consider constitutional claims or questions of law raised within a petition for review. 8 U.S.C. § 1252(a)(2)(D).

---

[5]Though petitioners did not challenge the IJ's determination regarding voluntary departure on appeal to the BIA, the BIA also found "no error in the [IJ's] denial of voluntary departure to both respondents."

The question-of-law exception to statutory preclusion of review does not apply in this case because the essence of the petitioners' challenge is a challenge to the application of an accepted standard to a particular set of facts. In the context of asylum cases, we have reasoned that "[b]ecause [the petitioner's] claim relies on contesting these sort of factual determinations [in relation to the application of the 'changed circumstances' provision in asylum cases] rather than on statutory construction or a constitutional claim, we are without jurisdiction to review the BIA's determination denying her asylum." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).

Petitioners argue that the BIA made an error of law in regard to its hardship determination by overlooking or seriously mischaracterizing certain vital facts. But the petitioners here are really challenging the weight the BIA afforded certain evidence in relation to previous decisions, and not truly raising a question of law. As we said in *Abdul v. Holder*, "[i]nasmuch as Abdul's argument constitutes 'nothing more than a challenge to the [BIA's] discretionary and fact-finding exercises cloaked as a question of law[,]' we lack subject matter jurisdiction to review his claim." 326 F. App'x 344, 347 (6th Cir. 2009) (alterations in original) (citation omitted). *See also Garcia-Aguillon v. Mukasey*, 524 F.3d 848, 850 (8th Cir. 2008), and *Farraj v. Holder*, 316 F. App'x 398, 400 (6th Cir. 2009) ("[Petitioner's] contention . . . 'amounts to nothing more than a challenge to the IJ's discretionary and fact-finding exercises cloaked as a question of law.'").

Petitioners cite a number of hardships that Maria's United States citizen children will be forced to endure if she is ordered removed and must return to Mexico. However, the petitioners cannot credibly assert that the IJ or the BIA failed to consider these facts in making their

determinations. In reaching its decision, the IJ discussed extensively all of the evidence presented at the petitioners' immigration hearing. Moreover, the BIA referred specifically to the evidence submitted regarding Maria's daughter's problems in school, and noted the decreased weight given to that evidence because of the lack of a formal diagnosis and because the petitioners had failed to show that Maria's children would be completely deprived of educational opportunities in Mexico.

Petitioners also refer to the BIA's prior decisions in *In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (BIA 2002) and *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56 (BIA 2001),[6] but petitioners cannot successfully claim, and do not claim, that the IJ or the BIA mischaracterized or failed to apply the legal standards laid out in those cases. In fact, both the IJ and the BIA referred specifically to those cases in addressing and discrediting the petitioners' "exceptional and extremely unusual hardship" arguments. Accordingly, the petitioners are merely disguising their challenges to the IJ's and BIA's factual and discretionary findings as questions of law by cloaking them in legal terms—simply calling a question "legal" is not enough. These mere references do not raise a colorable legal question, and thus this court does not have jurisdiction to review the BIA's hardship determination.

---

[6]*Monreal* explained the meaning of "exceptional and extremely unusual hardship," as something "substantially beyond that which ordinarily would be expected to result from the alien's deportation," but did not require showing that deportation would be unconscionable. 23 I. & N. Dec. at 59-60. In that case, the BIA laid out the relevant factors, considered them in the aggregate, and found that the alien, who was a father of two United States citizen children and who had family in his native country of Mexico, had not demonstrated the requisite hardship. *Id.* at 63-65. However, the BIA did find that the alien in *Recinas* demonstrated the requisite hardship. That case involved a single-mother of four United States citizen children who had no relatives in her native country of Mexico. *Recinas*, 23 I. & N. Dec. at 467, 470-71. Still, the BIA noted in that decision that "[t]he cumulative factors present in this case are indeed unusual and will not typically be found in most other cases, where respondents have smaller families and relatives who reside both in the United States and their country of origin." *Id.* at 473.

**III.**

We recognize that this court's opinion in *Aburto-Rocha v. Mukasey* interpreted §

1252(a)(2)(B)(i) as preventing only the review of the *discretionary* decisions of the BIA. 535 F.3d

500, 502 (6th Cir. 2008) ("[N]on-discretionary decisions . . . are within our purview, even where they

underlie determinations that are ultimately discretionary." (first alteration in original)). *Aburto-*

*Rocha* reasoned that there are two exceptions to the jurisdictional bar found in § 1252(a)(2)(B)(i)

with respect to cancellation of removal: the one explicit in § 1252(a)(2)(D) for constitutional claims

or legal questions, discussed above; and the one implied by this court for non-discretionary

determinations.[7]

---

[7]This aspect of *Aburto-Rocha* is based on the section heading of the statutory provision, notwithstanding the general federal rule that, absent ambiguity, "the title of a statute or statutory section generally cannot be used to constrict the plain language of the statute." *CDI Info. Servs., Inc. v. Reno*, 278 F.3d 616, 619 (6th Cir. 2002).

Prior to the adoption of the REAL ID Act of 2005, which amended § 1252(a)(2) to include an explicit exception to the jurisdictional bar in § 1252(a)(2)(D), other circuits implied a similar exception to the jurisdictional bar. However, most of those circuits based this exception on the meaning of the term "judgment" as used in § 1252(a)(2)(B)(i), and considered this language to provide an exception for non-discretionary, legal questions. *See, e.g.*, *Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir. 2005); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215-16 (5th Cir. 2003); *Iddir v. I.N.S.*, 301 F.3d 492,496-98 (7th Cir. 2002); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1141-44 (9th Cir. 2001). After the adoption of the REAL ID Act of 2005 and the inclusion of § 1252(a)(2)(D), the propriety of this implied exception is unclear. *See Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("These two characterizations, which may appear to be two separate avenues of jurisdiction, are congruent: BIA statutory interpretation pursuant to an eligibility determination is nondiscretionary and therefore reviewable precisely because it presents a legal question. In contrast, the BIA's factfinding, factor-balancing, and exercise of discretion normally do not involve legal or constitutional questions, so we lack jurisdiction to review them").

Thus it remains unclear whether the two categories identified in *Aburto-Rocha* overlap entirely or almost entirely.

Even considering a "non-discretionary" limitation on the jurisdictional bar of §

1252(a)(2)(B)(i), this court still lacks jurisdiction to review the BIA's determination in this case.

Petitioners argue that the BIA ignored its own precedent in making the bad-moral-character

determination, and that it thus was a non-discretionary decision, despite precedents like *Kalaw v.*

*Immigration & Naturalization Service*, 133 F.3d 1147, 1151 (9th Cir. 1997) ("Apart from the per

se categories, however, whether an alien has good moral character is an inquiry appropriate for the

Attorney General's discretion."), and *Mateo v. Gonzales*, 217 F. App'x 476, 481 (6th Cir. 2007)

("Findings of both moral character and hardship are considered discretionary.").

Though ignoring precedent in issuing a decision can arguably mean that the decision was

non-discretionary and therefore subject to review, *Aburto-Rocha*, 535 F.3d at 503, petitioners do not

allege that the BIA ignored precedent when making the *hardship* determination in relation to Maria's

request for cancellation of removal. Thus review of the BIA decision must be denied even if the

BIA's alternative good-moral-character determination was non-discretionary. Both hardship to a

qualifying relative *and* good moral character must be shown in order to qualify for cancellation of

removal. Petitioners have not shown disregard of inconsistent BIA precedent regarding the hardship

determination, as explained in Part II.

**IV.**

For these reasons, we DENY the petition for review.