NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0695n.06

No. 11-3583

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 29, 2012*

LEONARD GREEN, Clerk

WEI ZHENG,

    Petitioner,

v.

ERIC H. HOLDER JR., Attorney General,

    Respondent.

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

_____ /

BEFORE:    DAUGHTREY and CLAY, Circuit Judges;  CLELAND, District Judge.[*]

**CLAY, Circuit Judge.**   Petitioner Wei Zheng, a native and citizen of China, petitions for review the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") order to deny Petitioner's application for adjustment of status. For the reasons set forth below, we dismiss for lack of jurisdiction Petitioner's request for adjustment of status and **DENY** the petition for review.

**BACKGROUND**

Petitioner is a thirty-seven year old male and is a native citizen of China. He currently operates two restaurants in the Toledo, Ohio area. Petitioner entered the United States on a B-2 visa

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

from Hong Kong on July 28, 1991. Petitioner's mother had someone file an application for status on his behalf under the Chinese Student Protection Act in 1991. Petitioner claimed that he was a participant in the 1989 democracy demonstrations in China and shortly after sought asylum in the United States. These same individuals also prepared false documents to help Petitioner obtain a work permit in the United States. Petitioner stated on the application that his date of entry into the United States was August 13, 1989. The INA granted Petitioner a work permit but later denied his application for status after it was discovered that Petitioner entered the United States without inspection.

Nonetheless, Petitioner remained in the United States and graduated from high school in 1993 and then went to work at his mother's restaurant. In 1994, Petitioner had someone file on his behalf an asylum application. Petitioner claimed that he signed the asylum application but never read the document. During this time, Petitioner's work permit expired and he was issued a new one and continued working at the restaurant. On August 8, 1995, Petitioner was issued an Order to Show Cause by the INS asylum office, and his case was referred to the New York Immigration Court.

### A. New York IJ Decision

On February 26, 1996, the New York IJ conducted a hearing on Petitioner's application for asylum. Petitioner admitted to the factual allegations in the Order to Show Cause and conceded removal. The IJ issued a decision denying Petitioner's application based on an adverse credibility finding and granted voluntary departure until September 26, 1996. Petitioner did not leave the United States and instead filed an appeal to the BIA on March 7, 1996.

Prior to the BIA's review of the IJ's decision, Petitioner filed a motion to the BIA requesting a remand of his case to the IJ and to suspend his deportation in order to join his mother's application for deportation that was also pending. The BIA granted Petitioner's request. On March 10, 1997, the IJ issued an oral decision denying Petitioner's application to suspend his deportation. Petitioner did not appeal.

On February 7, 2007, Petitioner married his wife Chun Hua Zhang, a U.S. citizen, and together they have two children.[1] Petitioner's wife filed an I-130 visa petition with the Department of Homeland Security ("DHS") on behalf of her husband. Petitioner's wife stated on the application that Petitioner entered the United States on July 28, 1991 with a B-2 visitor visa that expired on January 27, 1992. DHS approved the visa petition in May 2007.

Petitioner filed a motion to reopen with the New York Immigration Court in August 2007 to apply for an adjustment of status under 8 U.S.C. § 1255. In his application for adjustment of status, Petitioner submitted a personal affidavit, his approved I-130 visa petition and other documents. The IJ granted the petition on November 9, 2007. The case was transferred to the Cleveland Immigration Court after DHS requested a change of venue based on Petitioner's Ohio address.

On April 24, 2008, Petitioner appeared *pro se* before the IJ. At the hearing, Petitioner requested that his case be transferred back to New York because his home address was in Brooklyn

---

[1] It is unclear from the record what happened between the time the New York IJ issued the oral decision denying Petitioner's application to suspend his deportation in 1997 and the time Petitioner applied for an adjustment of status in 2007.

New York and he had been living in New York for the past two years. DHS objected to Petitioner's change of venue request, and the IJ agreed.

### B.    Cleveland IJ Hearing

Petitioner appeared with counsel at a subsequent hearing before the Cleveland Immigration Court on February 23, 2009. During the IJ hearing, Petitioner made a number of inconsistent statements and admitted that he filed a fraudulent application to obtain a work permit and also submitted falsified documents in his asylum application. Initially, Petitioner stated that his home address was in Brooklyn, New York but later clarified that his permanent home was in Ohio. He further claimed that he only lived in New York four to five months out of the year and last visited three months prior to the hearing. Petitioner also confirmed that he made a number of false statements on his immigration applications and lied to a number of immigration officials. Petitioner testified that he filed a fraudulent application for relief under the Chinese Student Protect Act in 1991. Petitioner further stated that he provided two fraudulent documents at his asylum interview in 1995 and that he also lied about his involvement in the 1989 student democracy movement in China. Petitioner also admitted that he submitted a fraudulent work permit application. Finally, Petitioner admitted that he lied under oath at his New York immigration proceedings and also lied to an INS asylum officer.

On March, 19, 2009, Petitioner filed a motion to reopen the record to admit new evidence and to reopen testimony for new evidence. Petitioner stated in his motion that the new evidence is critical to establish his credibility and the new evidence further supported his claim of extreme

hardship should he be removed.  The IJ denied Petition's motion to reopen the record and to reopen testimony on March 26, 2009.

### C.      The IJ Decision

Petitioner's hearing for adjustment of status and removal with the IJ was held on April 20, 2009. The IJ found Petitioner incredible based on a number of inconsistent and false statements. Through the course of the hearing, the IJ determined that Petitioner did not reside in New York but in Ohio and therefore denied Petitioner's request to transfer venue to the New York Immigration Court.  During the hearing, Petitioner clarified that he actually lives with his wife and children in Toledo, Ohio and only goes to New York periodically for business and to visit his mother.

In addition, the IJ determined that Petitioner did not enter the United States with a valid B1 visa.  Petitioner testified during the IJ hearing that he entered the United States on a B1 visa on July 28, 1991. To support his claim, Petitioner submitted a copy of an I-94 card that he received upon entering New York at JFK Airport.  The IJ questioned whether Petitioner actually obtained the I-94 card after he acknowledged that individuals prepared fraudulent documents on his behalf that were submitted with various applications in order to obtain authorization to stay in the United States. Initially, Petitioner claimed that he signed the documents without reading them, but it was later determined that by the time the applications were filed, Petitioner was proficient in English.  The IJ determined that Petitioner did not enter the U.S. on a valid B1 visa. The IJ further determined that Petitioner's asylum application contained false statements and was supported by fabricated documents.

Finally, the IJ found that Petitioner's witnesses also had major holes in their testimony. The IJ heard testimony from Petitioner's mother, Mei Yu Hong, Petitioner's wife, Chun Hua Zhang, and Petitioner's brother, Yan Zheng, who each testified that they would experience extreme hardship should Petitioner be removed to China. Petitioner's wife testified that she suffers from a heart condition and also has a history of mental illness. She also stated that the revenue from Petitioner's restaurants serves as her primary source of income. She also testified that she attempted suicide in 2002 during her previous marriage and as a result sought counseling. However, the IJ noted that Petitioner's wife only attended counseling sessions for four months and was currently not receiving any counseling. Petitioner's mother testified that she has cancer and that she was dependent on her son's care. She also stated that Petitioner lives with her in Brooklyn, New York. However, when the IJ asked Petitioner's mother about Petitioner's previous statement that he lives in Ohio, she became "agitated and flustered." The IJ also doubted Petitioner's mother's credibility after she initially testified that she had stomach cancer in 2005 but then had difficultly explaining the current state of her cancer. The mother finally conceded that her cancer was in remission since her surgery in 2005 and that she was well enough to travel to China in 2007 for a five-month visit.

Petitioner's brother also testified that he works with Petitioner at one of his restaurants. The IJ found Petitioner's brother more credible than Petitioner and his mother but the IJ ultimately concluded that Petitioner's brother was not a credible witness after he could not find any documentation that supported Petitioner's brother's claim that he was briefly hospitalized after a suicide attempt in 2001.

The IJ determined that Petitioner did not demonstrate that his removal "would result in extreme hardship to either his United States citizen wife, or his lawful permanent resident mother, or both." (AR 211.) The IJ was also not persuaded by Petitioner's brother's explanation that it would not be possible to hire someone else to manage the restaurant in Petitioner's absence. The IJ noted that Petitioner's brother failed to explain why a manager could not be hired to oversee the restaurant. In addition, the IJ could not find any evidence to support Petitioner's mother's claim that she required Petitioner to attend her monthly medical check-ups. The IJ did not find any evidence in the record to show that Petitioner's wife could not participate in Petitioner's restaurant business in his absence. The IJ also noted that Petitioner's restaurant business was not the only source of financial support for his family as Petitioner's wife was employed as a waitress as recently as 2008. The IJ also found that Petitioner's wife and family could be supported by his real estate investments, which have a net value of $174, 600. The IJ determined that this money could be converted into cash to support his family.

In addition, the IJ considered Petitioner's fraudulent documents that supported his various applications and determined that the "fraud and misrepresentation are long-standing, repeated, knowing, and intentional." (*Id.* at 214.) The IJ found Petitioner's conduct "so egregious that they easily . . . outweigh positive factors that would mitigate in favor of granting a waiver of inadmissibility." (*Id*. at 215.)

The IJ issued a written decision denying Petitioner's application for adjustment of status and a waiver of inadmissibility under section 212(I) of the Immigration and Nationality, 8 U.S.C § 1182(I). Petitioner appealed the IJ's decision on November 17, 2009.

**D.      The BIA Decision**

The BIA affirmed the IJ's decision on May 6, 2011. First the BIA found that the IJ's adverse credibility finding was not clearly erroneous. The BIA noted that Petitioner provided inconsistent responses concerning his place of residence. Petitioner initially testified during the IJ hearing that he lived in New York and then later testified that he actually lives in Ohio and only "occasionally travels to New York." (BIA Decision 1.) In his appeal to the BIA, however, Petitioner stated that he only resided in New York for approximately four to five months in 2008. In addition, the BIA noted that Petitioner filed a false claim under the Chinese Student Protection Act and also a false application for adjustment of status.

Second, the BIA agreed with the IJ's determination that Petitioner failed to demonstrate eligibility for adjustment of status under 8 U.S.C. § 1255(a). The BIA found that Petitioner failed to provide adequate documentary support to prove that he was inspected and admitted into the United States. The BIA considered Petitioner's history of submitting fraudulent documents to immigration authorities as well as his lack of credibility during the IJ hearing in affirming the IJ's decision to deny his request for adjustment of status.

Finally, the BIA affirmed the IJ's finding that Petitioner's "repeated dishonesty in immigration proceedings" outweighed the favorable discretionary factors presented, including his long residence, family ties, and his business ownership, and therefore denied Petitioner's adjustment of status as a matter of discretion. (BIA Decision 2.)

Petitioner filed a motion to stay removal to this Court on September 9, 2011 and also timely filed this petition for review. A panel of this Court denied the motion to stay removal.

## DISCUSSION

### I.    Adjustment of Status

As an initial matter, we must determine whether we have jurisdiction to review the BIA's denial of Petitioner's application for adjustment of status. We review "the existence of subject matter jurisdiction *de novo*." *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630 (6th Cir. 2006). "The party opposing dismissal has the burden of proving subject matter jurisdiction." *GTE North, Inc. v. Strand*, 209 F.3d 309, 915 (6th Cir. 2000 ), *cert denied*, 531 U.S. 951 (2000).

Petitioner argues that we have jurisdiction over his adjustment of status claim because the BIA made a non-discretionary determination to deny his application for adjustment of status.

Under 8 U.S.C. § 1252(a)(2)(B), we are precluded from reviewing "any judgment regarding the granting of relief under . . [8 U.S.C. §1255]" or "any other decision or action of the Attorney General or the Secretary of Homeland Security" that is discretionary.[2] *Id*.

Although we generally lack jurisdiction to review the discretionary denial of an adjustment of status application, *see* 8 U.S.C. § 1252(a)(2)(B), we may retain jurisdiction to review constitutional claims or questions of law, including the issue of whether a Petitioner is statutorily eligible for adjustment of status. *See* 8 U.S.C. § 1252(a)(2)(D). In this case, the BIA affirmed the IJ's discretionary denial of Petitioner's application for adjustment of status. The BIA considered both the positive and negative factors prior to denying Petitioner's application. The BIA determined

---

[2]The Real ID Act applies in the instant case since the IJ issued its decision after May 11, 2005. Nonetheless, the amendments to the Act still preclude courts from reviewing administrative decisions made discretionary by the statute. *See Kucana v. Holder*, 558 U.S. ___, 130 S. Ct. 827, 831 n.1 (2010).

that Petitioner's negative factors—the fraud and misrepresentation contained in Petitioner's application—outweighed the credible testimony from some of Petitioner's witnesses and the possibility of hardship should Petitioner be removed. The BIA concluded that Petitioner's long-standing history of intentionally misleading the immigration courts was so egregious that they easily outweighed the positive factors. Because the BIA's decision to deny Petitioner's adjustment of status application was discretionary and not based on statutory construction, we do not have jurisdiction to review the BIA's findings. *Johns v. Holder*, 678 F.3d, 404, 406 (6th Cir. 2012) (noting that arguments that challenge "the Board's assessment of the weight and credibility of the evidence [are] matters that the statute commits to the Attorney General's 'sole discretion'"); *see also Almuthaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006) (stating that since Petitioner's "claim relies on contesting . . . factual determinations rather than on statutory construction or a constitutional claim, we are without jurisdiction to review the BIA's determination denying her asylum."). Therefore, the BIA's discretionary reasons to deny Petitioner's adjustment of status application precludes our review of this claim.

Petitioner mistakenly relies upon our decision in *Aburto-Rocha v. Mukasey* to support his argument. 535 F.3d 500 (6th Cir. 2008). In *Aburto-Rocha* we identified two exceptions to the jurisdictional bar under § 1252(a)(2)(B)(I). Under the first exception, we are permitted to "review constitutional claims or questions of law." *Id*. at 502. The second exception "prevents us from reexamining only *discretionary* decisions by the agency." *Id*. Petitioner contends that we have jurisdiction because "non-discretionary decisions . . . are within our purview, even where they

'underlie determinations that are ultimately discretionary.'" *Id*. at 502. (quoting *Bileke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004).

In *Aburto-Rocha*, we had jurisdiction to review Petitioner's claims because the BIA committed a legal error by failing to follow its own binding precedent before denying Aburto-Rocha's application for cancellation of removal. *Id*. at 503. We characterized the BIA's decision to ignore its own precedent as a "non-discretionary act" because it involved the review of legal errors. In this case, Petitioner does not provide any evidence that the BIA committed legal errors or failed to follow its own precedents in its decision to deny Petitioner's application for adjustment of status. *See Reyes v. Holder*, 410 F.App'x 935, 940 (6th Cir. 2011) (finding that the *Aburto-Rocha* exception did not apply because petitioner did "not allege that the BIA ignored precedent when making the *hardship* determination in relation to Maria's request for cancellation of removal"). Contrary to Petitioner's argument, the BIA's decision was discretionary in nature and based on factual findings by the IJ. The IJ stated in its oral decision that his findings were based on discretionary factors including a review of "positive factors, such as family ties, length of residency, and hardship" as well as Petitioner's negative factors, including the adverse credibility finding and the fact that he repeatedly lied to immigration officials. (AR 203.) The BIA affirmed the IJ's discretionary denial of Petitioner's application for adjustment of status. Because we conclude that Petitioner seeks review of a discretionary decision, we accordingly lack jurisdiction to review this claim.

## II.  Request to Admit New Evidence

Petitioner also argues that the IJ erroneously denied Petitioner's motion to admit additional evidence and testimony. Petitioner contends that the new evidence was relevant and material and supported his application for adjustment of status and furthermore, counsel never requested the proffered evidence.

As an initial matter, there is no evidence in the record that Petitioner raised this issue on appeal to the BIA. Petitioner's brief also does not address whether he raised this issue to the BIA. "[T]o the extent that [a petitioner] has failed to exhaust his administrative remedies with respect to certain claims, this court does not have jurisdiction to address those claims." *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2006).

Even assuming that Petitioner exhausted his administrative remedies, the record does not compel us to conclude that the IJ's decision to deny Petitioner's motion was erroneous. In its order denying Petitioner's motion to reopen the record, the IJ explained that "the parties had adequate opportunity to present all pertinent evidence in this matter" and a further delay would disrupt the evidentiary hearing process. The additional evidence that Petitioner requested did not go to the heart of Petitioner's claim that he was entitled to an adjustment of status. Rather, the new evidence included medical records of his wife and his mother, which was immaterial and does not rebut the IJ's adverse credibility finding. *See Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1049–50 (6th Cir. 2007) (BIA denied the motion to reopen because "the petitioner submitted 'minimal and insufficient' documentation to establish the bona fides of her marriage"). Moreover, even if the IJ was to consider the new evidence, it would not overcome Petitioner's general lack of credibility. Therefore, we affirm the IJ's decision to deny Petitioner's request to submit additional evidence.

**CONCLUSION**

For the foregoing reasons, we dismiss for lack of jurisdiction Petitioner's adjustment of status claim because the BIA denied the application as a matter of discretion and Petitioner did not raise any constitutional issues or a questions of law. We also affirm the IJ's denial of Petitioner's motion to submit additional evidence.

For these reasons we **DENY** the petition for review.