CLAY, Circuit Judge,
dissenting.
Although it is not entirely clear from the record that Petitioner Mario Ederrilso Ruiz-Del-Cid knew at the time he submitted an asylum application in 1993 that it contained false material statements, it was clear by 2007, that Petitioner was aware of these falsities. In fact, not only did Petitioner fail to retract those false statements at the time, he also repeated the lies again during an interview with an asylum officer. When asked by an immigration judge why he lied to the asylum officer, Petitioner stated as follows:
Perhaps because I didn’t have the advice of an attorney and I made a comment with the same people, with the same people that have the same case as mine. And they told me you have to sustain what you said in the application because if you don’t, you are going to be, your work permit is going to be revoked and you are going to be deported.
(A.R. at 273.) The immigration judge and the Board of Immigration Appeals (“BIA”) found this explanation unconvincing. The majority disagrees, concluding that Petitioner’s explanation and the facts surrounding his case provide sufficient grounds for application of the doctrine of retraction. Because I disagree with the majority’s characterization of this doctrine and its application in this case, I respectfully dissent.
First, it does not appear that the law on the doctrine of retraction is as clear as the majority would have us believe. In fact, the majority goes to some lengths to demonstrate that the only correct interpretation of this doctrine is one that does not consider the amount of time that passed between the making of the false statement and the retraction of that statement. Although the majority casts aside the small number of cases and BIA decisions that considers the amount of time that passed between the false statement and the retraction, it appears that there is a non-inconsequential number of cases and BIA decisions that do, in fact, consider this amount of time, either as a dispositive issue or as a non-dispositive factor to be considered by an immigration judge.
In the instant case, the BIA’s decision was based, in part, on those cases that define timeliness of retraction by the amount of time that passed until the retraction, and also on whether Petitioner retracted when it was possible to do so during his interview with the asylum officer. It does not appear that the BIA relied exclusively on the amount of time that passed; and even if it had, because this is a question “implicating ‘an agency’s construction of the statute which it administers,’ the [majority] should have applied the principles of deference described in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).” I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). Because the BIA’s construction of the doctrine of retraction in this case was not “arbitrary, capricious, or manifestly contrary to the statute,” Sad v. I.N.S., 246 *643 F.3d 811, 815 (6th Cir.2001) (quoting Chevron, 467 U.S. at 844, 104 S.Ct. 2778), we should defer to the BIA on this issue. Consequently, I disagree with the majority’s conclusion.
Even accepting the majority’s definition of timeliness of retraction, I dispute the majority’s premise that Petitioner’s retraction meets the appropriate definition of timeliness. First, Petitioner’s retraction was not done “at the next appropriate opportunity.” Maj. Op. at 640. In fact, Petitioner admitted during his hearing before the immigration judge in 2011 that he was aware of the falsity of his statements to the asylum officer when he provided them in 2007. Even assuming that Petitioner’s false statements might have been excusable in 1993 due to faulty language translations or Petitioner’s lack of awareness, Petitioner was certainly aware that he made false statements under oath in 2007 — because he believed his status in the country would have been put in jeopardy had he corrected those statements at that time. Petitioner did not need legal counsel to tell him that what he did was wrong. In fact, he openly admitted that he was aware that he lied under oath in 2007. Between 2007 and 2011, Petitioner had multiple opportunities to retract his false statements, but he failed to do so. Instead, he waited until his asylum application was denied and the Department of Homeland Security initiated removal proceedings against him. These facts alone provide substantial evidence to support the BIA’s determination that Petitioner failed to timely retract his false testimony.
Furthermore, it is not at all clear from the record that Petitioner’s retraction occurred before the exposure of his false testimony was imminent. One can easily read the facts of this case to conclude that Petitioner did not retract those statements voluntarily before their falsity was about to be exposed. (Petitioner initially made fraudulent statements in his 1993 asylum application, repeated those fraudulent statements under oath during an interview with an asylum officer in 2007 with the knowledge that those statements were false, and only after his application containing the false statements was denied and his attorney pushed him to correct those statements did he actually retract them before the immigration judge.) It appears from the record that Petitioner’s attorney pressured him to retract those statements because after learning of their falsity, the attorney was not willing to allow Petitioner to continue perjuring himself.[1] Therefore, even if the amount of time that passed between the statements and their retraction is not to be considered, Petitioner still faces the problem of not having “timely” retracted his false statements.
The law seems to contemplate that all of the circumstances surrounding a petitioner’s retraction may be taken into account in making a timeliness determination. In the instant case, where Petitioner permitted his fraudulent version of the facts to stand for at least four years and only retracted his false statements after it became clear to him that they would not be useful in his asylum proceedings, there is *644 more than ample support for the BIAs conclusion that Petitioner’s retraction was not “voluntary and without delay.” Matter of Namio, 14 I. & N. Dec. 412, 414 (BIA 1973).
I would therefore deny the petition for review on the basis that Petitioner’s failure to establish the requisite good moral character is dispositive of his claim, and remand is not warranted. See Reyes v. Holder, 410 Fed.Appx. 935, 940 (6th Cir.2011).

. During the hearing before the immigration judge, Petitioner's attorney stated that
once [Petitioner] advised me that the information was not correct, we came to a decision that obviously if it’s not correct, we cannot go forward with it even if it’s going to hurt him, we can’t go forward with it. And in fact, we have to actually withdraw it and let the Judge know why it has been withdrawn. It's not an easy choice to make.... Once he was advised by counsel that that was inappropriate and could not go forward and must be cleared up no matter how it hurt him, he did it.
(A.R. at 279-81.)