*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0268p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SERVANDO ABURTO-ROCHA,

> *Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General of the
United States,

> *Respondent.*

No. 07-3871

>

---

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A78 472 544.

Submitted: July 25, 2008

Decided and Filed: July 28, 2008

Before: MOORE and SUTTON, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Jonathan Golden, GOLDEN & JERNIGAN, Grand Rapids, Michigan, for Petitioner.
Jennifer L. Lightbody, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

---

## OPINION

---

SUTTON, Circuit Judge. Servando Aburto-Rocha seeks review of an order of the Board of
Immigration Appeals (BIA) denying his application for cancellation of removal. Because the BIA
did not unreasonably apply its own precedent in rejecting his application, we deny the petition for
review.

I.

Aburto-Rocha first entered the United States in 1984 in or near San Ysidro, California. In
2001, the Immigration & Naturalization Service charged him with removability as an alien present

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by
designation.

in the country without having been admitted or paroled. At his initial hearing before an Immigration Judge (IJ) in December 2001, Aburto-Rocha conceded the material facts alleged in his Notice to Appear and his removability.

In March 2002, he applied for cancellation of removal. And in December 2003, the IJ denied Aburto-Rocha's application, concluding that he had failed to show two of the four statutory requirements for cancellation: that he had been present in this country for the requisite continuous ten-year period, 8 U.S.C. § 1229b(b)(1)(A), and that his "removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child" who is either a U.S. citizen or lawful permanent resident, *id.* § 1229b(b)(1)(D). Aburto-Rocha challenged the IJ's resolution of both issues before the BIA, arguing in particular that in passing on the hardship element the IJ had "misapplied" two controlling BIA decisions: *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56 (2001), and *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (2002). The BIA reversed, concluding that the IJ's hardship analysis was "incomplete," and remanded the case for further consideration of the issue. JA 51.

On remand, the IJ denied Aburto-Rocha's application again, this time providing a more detailed analysis of the hardship prong. Aburto-Rocha again appealed to the BIA, again challenging the IJ's resolution of the continuous-presence and hardship requirements. The BIA affirmed the IJ's determination on the hardship issue and found it unnecessary to reach the continuous-presence question.

II.

The Attorney General "may cancel the removal of . . . an alien who is . . . deportable" if the alien shows that (1) he has been present in the country for a continuous ten-year period before applying for cancellation, (2) he "has been a person of good moral character during such period," (3) he has not been convicted of certain identified offenses and (4) "removal [of the alien] would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1). No one disputes that Aburto-Rocha satisfies the second and third of these conjunctive requirements; the question is whether he satisfies the first and fourth, and in particular whether the BIA was correct in holding that he did not satisfy the fourth prong.

A.

Before undertaking this inquiry, we must determine our jurisdiction over it. Aburto-Rocha faces two jurisdictional hurdles. Section 1252(a)(2)(B)(i) of Title 8 prevents us from reviewing denials of applications for cancellation of removal, and § 1252(a)(2)(B)(ii) prevents us from reviewing "any other decision or action of the Attorney General which is specified" to be in his or her "discretion." *See also Bichi v. Gonzales*, 157 F. App'x 835, 837 (6th Cir. Nov. 28, 2005) (per curiam). The two provisions at first glance seem to lead to a jurisdictional dead end: Aburto-Rocha is seeking review of the denial of an application for cancellation of removal, and that decision generally rests in the discretion of the Attorney General. *See Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007); *Valenzuela-Alcantar v. INS*, 309 F.3d 946, 949–50 (6th Cir. 2002) (holding that a BIA decision on the hardship requirement is a discretionary decision not subject to judicial review).

Yet two exceptions to these provisions—one explicitly drawn by the statute, one inferred from its general framework—modify the (seemingly) categorical imperative of the statute. First, the statute elsewhere explicitly permits us to review "constitutional claims or questions of law." *See* 8 U.S.C. § 1252(a)(2)(D). Second, as the heading of the underlying provision suggests, *see id.* § 1252(a)(2)(B) ("Denials of discretionary relief"), the statute prevents us from reexamining only

*discretionary* decisions by the agency, including discretionary denials of an application for cancellation of removal. "[N]on-discretionary decisions," by contrast, are within our purview, even where they "underlie determinations that are ultimately discretionary." *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004); *see also Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005) (holding that § 1252(a)(2)(B) "divests jurisdiction of a court to review judgments regarding the granting of discretionary relief, including the cancellation of removal," but does not remove jurisdiction to review the non-discretionary fact of an alien's continuous presence in the United States).

Aburto-Rocha insists that his challenge to the BIA's hardship decision—premised on the theory that the BIA failed to follow its own precedent—presents a question of law falling within the first exception. He may be correct, and we have suggested as much before. *See Billeke-Tolosa*, 385 F.3d at 711–12 (describing an alien's claim that the BIA failed to follow its own precedent as an assertion of "legal error" and noting that such a failure was barred by the BIA's own regulations and potentially the alien's due process rights). But we need not (and therefore do not) resolve the point today, because his claim comes within the exception for non-discretionary decisions.

No doubt, we (like every other circuit) have held that the BIA's hardship decision is a discretionary one and that, as a result, it generally lies beyond our jurisdiction. *See Valenzuela-Alcantar*, 309 F.3d at 949–50 (adopting this rule and citing other circuits' decisions to the same effect); *Hermez v. Gonzales*, 227 F. App'x 441, 443–44 & n.1 (6th Cir. Mar. 28, 2007) (holding that the BIA's decision on the hardship prong is a discretionary decision beyond our jurisdiction and that it does not fall within the exception for constitutional and legal claims). But the choice by the BIA to disregard its own binding precedent—even when deciding an issue that *is* within its discretion—is *not itself* a discretionary decision Congress has excluded from review. *See Billeke-Tolosa*, 385 F.3d at 711–12. The BIA's regulations themselves indicate that adherence to precedent is a non-discretionary act, as they *require* the agency to follow its own precedents except to the extent they are modified or overruled by the BIA or the Attorney General. *See* 8 C.F.R. § 1003.1(g). We have jurisdiction, in short, over this challenge to a non-discretionary error.

B.

That we may review a claim that the BIA ignored its own precedent in ruling on a hardship application, however, does not give us authority to second guess every choice the agency makes about how to apply uncertain or even conflicting precedents in a given context. While the application of precedent to a dispute may be "non-discretionary" in one sense, that does not make it mechanical in all settings and does not mean that reviewing courts are free to override the BIA's decision on the basis of what they perceive as a better reading of the agency's own precedent. What is generally true in administrative law remains true here: An agency's interpretation of its own precedents receives considerable deference, *see, e.g.*, *NSTAR Elec. & Gas Corp. v. FERC*, 481 F.3d 794, 799 (D.C. Cir. 2007); *cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997) (reciting the longstanding rule of deference to an agency's interpretations of its own regulations)—a form of deference that applies in equal measure to the BIA's interpretation of its precedents, *see, e.g.*, *Zheng v. U.S. Dep't of Justice*, 416 F.3d 129, 131 (2d Cir. 2005). That rule makes especially good sense here: stringently scrutinizing the BIA's determinations of which precedents apply in which contexts (and with what force) could easily devolve into—or even serve as a mask for—replacing the BIA's hardship judgment with our own. In reviewing Aburto-Rocha's challenge, we thus confine ourselves to asking whether the BIA reasonably construed and applied its own precedents in this case.

Although the BIA's analysis of its precedents was brief, it was not unreasonable. In identifying the standard of hardship Aburto-Rocha had to meet, the BIA expressly relied on its decisions in *Monreal-Aguinaga*, 23 I. & N. Dec. 56, and *Andazola-Rivas*, 23 I. & N. Dec.

319—decisions it has previously described as the "seminal interpretations of the meaning of 'exceptional and extremely unusual hardship'" in the cancellation-of-removal statute, *In re Recinas*, 23 I. & N. Dec. 467, 472 (2002), and decisions Aburto-Rocha himself has implicitly acknowledged still set the controlling standard, *see* JA 53 (challenging the IJ's first ruling on the hardship element on the ground that it "misapplied" the Board's decisions in *Monreal-Aguinaga* and *Andazola-Rivas*). A review of those decisions confirms that the BIA fairly applied its precedent here.

In *Monreal-Aguinaga*, the alien's cancellation claim turned exclusively on the hardship prong, and the BIA examined the relevant statutory provision in great detail, sifting through evidence of the provision's text, structure and history to determine what an applicant for cancellation of removal had to demonstrate. *See* 23 I. & N. Dec. at 58–64. To meet this standard, it concluded, the alien must show that his "qualifying relatives"—a spouse, parent or child that is either a U.S. citizen or a legal permanent resident, *see* 8 U.S.C. § 1229b(b)(1)(D)—"would suffer hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here," *Monreal-Aguinaga*, 23 I. & N. Dec. at 65. Applying that standard to the facts before it—facts bearing a close resemblance to today's case—the BIA concluded that the alien had failed to meet this burden. *See id.* at 64–65 (observing that the alien "would likely have . . . [satisfied the] 'extreme' hardship" requirement imposed by the previous version of the statute—as his departure after 20 years in the country would result in the "loss of long-standing employment," various hardships for his school-age U.S.-citizen children and separation from his remaining extended family in the United States—but explaining that this fell short of the high standard Congress had established via the "exceptional and extremely unusual hardship" requirement).

In *Andazola-Rivas*, decided less than a year later, the BIA applied the *Monreal-Aguinaga* standard. It first noted several additional sources of hardship not identified in the previous case—that the alien was an unwed mother who likely would encounter unfavorable employment prospects in Mexico due to her gender, that her children's educational opportunities would be constricted and that she would have no family in Mexico to support her. *See* 23 I. & N. Dec. at 323–24. Still, however, it concluded that it "[could not] meaningfully distinguish [that] case from . . . *Monreal*[-*Aguinaga*]." *Id.* at 324. "[A]lmost every case," the BIA explained, "will present some particular hardship," but the burdens the alien had identified were "simply not substantially different from those that would normally be expected upon removal to a less developed country." *Id.*

In reviewing Aburto-Rocha's case, the BIA cited both decisions and accurately distilled the standard they embody. Applying that standard, it addressed the principal harms to his U.S.-citizen children that Aburto-Rocha had argued would stem from his removal—including "emotional hardship" caused by the separation from his family remaining in the United States, "difficulty adjusting to life in Mexico" and "reduced educational and economic opportunities in Mexico." JA 6. Though far from trivial, these harms, the BIA reasoned, were not "substantially beyond that which ordinarily would be expected to result from the [alien's] removal." *Id.* And the one difficulty Aburto-Rocha identified that is *not* common to most cancellation-of-removal applicants—his eldest daughter's health problems—was not enough to tip the balance because he failed to show that "adequate medical treatment and monitoring" would be unavailable if the daughter left for Mexico with him. *Id.*

In critiquing this analysis, Aburto-Rocha notes that the BIA failed to cite or apply its later decision in *Recinas*, 23 I. & N. Dec. 467. While acknowledging that "the [BIA] is not required to cite all its decisions in any opinion," he insists that "[n]o case could be closer to *Recinas*" than the present one, Br. at 12, and thus the BIA "deliberately left out its most similar precedent," *id.* at 14. But in emphasizing this shortcoming in the BIA's order, if it is one at all, Aburto-Rocha makes more out of *Recinas* than the case deserves. Like *Monreal-Aguinaga* and *Andazola-Rivas*, *Recinas*

involved a Mexican-born alien who, along with her several children, had been present in the United States for more than a decade (excluding one brief absence). *See* 23 I. & N. Dec. at 467–68. The BIA acknowledged that "any analysis of [the] exceptional and unusual hardship" element must begin with the standard established in *Monreal-Aguinaga* and reaffirmed in *Andazola-Rivas*. *See id.* at 469; *see also id.* at 472 (observing that there was "no need to depart from the analysis set forth in [*Monreal-Aguinaga* and *Andazola-Rivas*]," as "[t]he hardship factors present in [*Recinas*] are more different in degree than in kind" from the prior cases).

After summarizing its two prior decisions and the high threshold they create, the BIA concluded that *Recinas* fell by a "close margin" on the other side of the line. *Id.* at 471. The burden on the alien's children was accentuated by the fact that the alien was a single mother and had no other family in Mexico, both "critical factors that distinguish[ed] her case" from other cancellation applications. *Id.* The BIA stressed, however, that it was a "close" case that reflected "the outer limit of the narrow spectrum of cases in which the exceptional and extremely unusual hardship standard will be met." *Id.* at 470.

Although the BIA would have done well to mention and distinguish *Recinas*, its failure to do so was not unreasonable. The order cited the decisions that *Recinas* itself acknowledged are controlling. And because Aburto-Rocha, unlike the single mother with no family in Mexico at issue in *Recinas*, apparently does have family in Mexico (his parents and two brothers)—not to mention his common-law wife and mother of his six children, who the IJ observed is likely to join him in Mexico (as she too is apparently ineligible for cancellation of removal)—the BIA had little reason to cite, or easily distinguish, *Recinas*.

To be sure, as the IJ candidly observed, there is room to argue that *Recinas* is "to some extent . . . seemingly inconsistent" with the two prior decisions. JA 71. But even if that is true, it is not for us to dictate to the BIA how it must mediate that tension in cases at the margin. Nor are we in a position to require it to offer a detailed justification for why it chose to cite certain cases but omit to distinguish others in each of its opinions. Given the material differences between the facts presented here and those presented in *Recinas*, at any rate, Aburto-Rocha has offered no basis for thinking that the balance the BIA struck here—one premised on the application of *Monreal-Aguinaga*'s general rule, not *Recinas*'s narrow, fact-specific exception—was unreasonable.

III.

For these reasons, we deny the petition for review.