NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0410n.06

No. 12-3833

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

IMTIAZ AHMAD,                   )

       Petitioner               )

v.                                    )

ERIC H. HOLDER, JR., Attorney General,   )

       Respondent            )

**FILED**
*Apr 25, 2013*
DEBORAH S. HUNT, Clerk

**ON PETITION FOR REVIEW OF A FINAL ORDER OF THE BOARD OF IMMIGRATION APPEALS**

---

BEFORE:     MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.

      **MERRITT, Circuit Judge.** Imtiaz Ahmad, a Pakistani native, seeks review of an order of the Board of Immigration Appeals ("BIA") denying his application for cancellation of removal. Neither the Immigration Judge ("IJ") nor the BIA unreasonably applied its precedent or misapplied the correct legal standard in rejecting his application. Therefore, we deny the petition for review.

## I. Background

      Imtiaz Ahmad, a married Pakistani national, came to the United States in 1990 in pursuit of his PhD. He did not finish his PhD and did not maintain his status as a student. Ahmad ran a small store and restaurant, where his wife worked as well. The couple had a son in Cincinnati in 2002. In 2003, Ahmad was charged as removable under 8 U.S.C. § 1227 (a)(1)(C)(i). He conceded removability and sought relief in the form of cancellation of removal.

At a hearing in front of the Immigration Judge, Ahmad testified that if he was deported, he would take his son, a United States citizen, with him. Ahmad said he has no relatives in the United States and all of his siblings and his parents live in Pakistan. His son has never been to Pakistan and speaks primarily in English, although he understands and can speak some Urdu. Ahmad testified to having nearly $60,000 in his personal accounts and that he would likely start a business in Pakistan. Although his son had some delay in speaking early on and had some health problems in the past, he stated that his son was "pretty healthy" at the time of the hearing. Ahmad stated that there are some good schools in Pakistan, but they are expensive. He believes his son could adjust to life in Pakistan, but it would be a very big adjustment.

To avoid removal, Ahmad had to establish that his removal would result in "exceptional and extremely unusual hardship" to his son. After hearing testimony and reviewing an extensive record, however, the Immigration Judge found that Ahmad had not met this burden. The Immigration Judge noted Ahmad's significant savings, his family ties in Pakistan, his son's basic knowledge of Urdu, and the educational opportunities in Pakistan. The Immigration Judge concluded that Ahmad did not establish any significant educational or heath issues in regard to his son.

The judge did note that the record supported a finding that Pakistan "is not a safe place for a United States citizen child," but found that "under the current legal standard and with this record[,] adverse country conditions alone" are insufficient to meet the hardship standard. Order of Immigration Judge at 13-14. After making the holding, the judge wrote,

> The Court will note or alternatively make a finding that if general adverse country conditions alone can meet the burden of proof on exceptional and extremely unusual hardship, the respondent may have accomplished that through the documentary

evidence related to conditions in Pakistan in this case. However, at this point, with this record, the Court finds it must deny relief due to lack of corroborating documentation that the Court believes should have been readily available. *Id.* at 15.

Ahmad appealed the Immigration Judge's decision to the Board of Immigration Appeals. On June 12, 2012, the BIA, in its order, agreed that Ahmad failed to show that his removal would result in exceptional and extremely unusual hardship to his son. The BIA then acknowledged the difficult conditions in Pakistan, but stated that Ahmad did not show that his child would be "left unprotected from harm or violence." Board of Immigration Appeals Order at 2. Citing *Matter of Monreal,* 23 I. & N. Dec. 56, 63 (BIA 2007), the Board stated that "a lower standard of living or adverse country conditions in the country of return 'will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship.'" *Id.* Accordingly, the Board dismissed the appeal. Ahmad timely appealed to this Court, claiming that the Immigration Judge and the BIA applied the wrong legal standard in regard to adverse country conditions and, in doing so, unreasonably applied its own precedent.[1]

## II. Analysis

The Attorney General "may cancel the removal of . . . an alien who is . . . deportable" if the alien shows that (1) he has been present in the country for a continuous ten-year period before applying for cancellation, (2) he "has been a person of good moral character during such period," (3)

---

[1]The Respondent claims that Ahmad has not exhausted his claim because his brief to the BIA did not present a legal question. Although we acknowledge that Ahmad's brief did not clearly distinguish between the factual and legal issues presented, Ahmad did exhaust his claim because he specifically appealed the issue of whether the "Immigration Judge erred in concluding that adverse country conditions alone are insufficient to prove hardship to US citizen son. . . ." Notice of Appeal at 2.

he has not been convicted of certain identified offenses, and (4) "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States. . . ." 8 U.S.C. § 1229b(b)(1). The question on appeal is whether Ahmad satisfies the last prong of "exceptional and extremely unusual hardship" and whether the BIA applied the correct legal standard and reasonably applied its own precedent in concluding that Ahmad did not satisfy this requirement.

First, we must determine whether we have jurisdiction. Generally, this Court cannot review discretionary decisions of the agency's denial of a cancellation of removal under 8 U.S.C. § 1252(a)(2)(B)(i) and (ii). We have held that an "extreme hardship" determination is a discretionary decision. *Valenzuela Alcantar v. I.N.S.*, 309 F.3d 946, 949-50 (6th Cir. 2002). But there are exceptions to this jurisdictional bar for "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). The questions of whether the BIA disregarded its own binding precedent and applied the wrong legal standard are non-discretionary questions of law that are reviewable by the courts of appeal. *Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011); *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008). Thus, we have jurisdiction over Ahmad's claims.

Next, it is important to note that even though we have jurisdiction to review these claims, it does not mean that we are "free to override the BIA's decision on the basis of what [we] perceive as a better reading of the agency's own precedent." *Aburto-Rocha*, 535 F.3d at 503. The agency's interpretation of its own precedent receives considerable deference, and therefore we confine our

review to asking whether the BIA reasonably construed and applied its own precedents in this case.

*Id.*

When considering the level of hardship, the Immigration Judge should consider the qualifying relative's age, health, length of residence in the United States, and family and community ties to the United States and abroad. *Matter of Monreal,* 23 I. & N. Dec. 56, 63 (BIA 2007). A lower standard of living, diminished educational opportunities, poor economic conditions, and other adverse country conditions are relevant factors. *See Matter of Andazola-Rivas*, 23 I. & N. Dec. 319, 323-34 (BIA 2002). *Matter of Monreal*, the case Ahmad points to as the precedent the BIA declined to follow, specifically states, "A lower standard of living or adverse country conditions in the country of return are factors to consider only insofar as they may affect a qualifying relative, but *generally* will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." 23 I. & N. Dec. at 63 (emphasis added).

Here, the immigration judge took into account all of the relevant factors mentioned above. The judge specifically mentioned that Ahmad testified to concerns about economic problems and lack of educational opportunities in Pakistan, but the record did not corroborate these concerns. The judge reasoned that Ahmad's significant assets and family ties could ease the economic transition, and that his son's ability to speak Urdu and attend a good school in Pakistan would satisfy the educational concerns.

Although the record did contain some information on violence against Americans in Pakistan, the bulk of the record pointed to health and safety hazards that all children in Pakistan may face, including poor sanitary conditions and the threat of sexual exploitation. On appeal to the Board and

even to this Court, the claim has not been made that Ahmad's child would necessarily be subject to more or different danger because he is a United States citizen. And, as the Immigration Judge pointed out, Ahmad did not document or corroborate any additional hardship factors and did not cite any safety concerns in his testimony, but rather only pointed to risky economic issues in Pakistan. Although the Immigration Judge was clearly sympathetic to the hardships faced by Pakistanis and described the court's position as a "difficult and frustrating" one, the record simply did not adequately provide proof of an "exceptional and extremely unusual hardship." The Immigration Judge, in coming to this conclusion, weighed the relevant concerns under the appropriate legal standard, understanding the constraints of the high burden, while taking into account all factors, including the adverse country conditions. The Immigration Judge heeded *Matter of Monreal's* suggestion that generally a lower standard of living or adverse country conditions are insufficient to support a finding of exceptional and extremely unusual hardship and found that this case did not provide the rare exception to that rule. Even if precedent had stated more broadly that adverse country conditions alone can support this hardship standard, the Immigration Judge found that Ahmad's case as it stood, still could not meet the burden without some additional documentary evidence. We find the Immigration Judge's holding to be reasonable.

The Immigration Judge's conclusion is, to some extent, reinforced by the many Pakistani asylum cases which hold that conditions in Pakistan, while often difficult, do not rise to the level of creating a legitimate fear of persecution. The hardship is not so "exceptional and extremely unusual" as to give rise to a serious fear of harm. *See, e.g.*, *Sultana v. Holder*, 350 F. App'x 59 (6th Cir. 2009); *Akhtar v. Gonzales*, 406 F.3d 399 (6th Cir. 2005).

The BIA, in its brief order, stated that "[f]or the reasons identified by the Immigration Judge," the level of hardship fell short of the exceptional and extremely unusual standard. The BIA clearly adopted the Immigration Judge's holding, which we have already held to be reasonable. The BIA correctly cited *Matter of Monreal* for support of its holding, and although the BIA perhaps should have quoted the case more appropriately in the last line of the opinion with the addition of the word "generally," the substantive reasons for the dismissal of the appeal were clearly based on the adoption of the Immigration Judge's ruling and not on an improperly-quoted section of a case. The BIA did not unreasonably apply its own precedent or apply the wrong legal standard.

### III. Conclusion

Accordingly, we deny the petition for review.