NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0073n.06

Nos. 18-3338/19-3357

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 03, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| VICTOR GALINDO-MUNOZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE:     SUHRHEINRICH, STRANCH, and NALBANDIAN, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  Petitioner Victor Galindo-Munoz ("Galindo-Munoz") seeks review of a decision of the Board of Immigration Appeals ("Board") dismissing his appeal and denying his motion to remand in Appeal No. 18-3338.  He also seeks review of the Board's decision denying his motion to reopen in Appeal No. 19-3357.  We dismiss both petitions for review.

## I.

Galindo-Munoz originates from El Potosi, in the state of Durango, Mexico.  Galindo-Munoz entered the United States illegally in 1996.  In April 2012 the Department of Homeland Security ("DHS") notified Galindo-Munoz of its intent to remove him from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  Galindo-Munoz conceded removability and sought cancellation of removal under 8 U.S.C. § 1229b(b).  DHS opposed cancellation.

*Removal Proceedings.* Galindo-Munoz testified in February 2016 that he has three children—Galindo-Munoz ("Junior"), Juan, and Anna—who are U.S. citizens. The children were 12, 10, and 8 years of age at the time of the hearing. Juan and Anna are in good health, but Junior was born with a cleft palate that requires surgeries and therapy, which are paid for by Medicaid. Galindo-Munoz testified that his children would join him if he were removed and that Junior would likely not have health insurance to continue his therapy. He did not know what, if any, treatment options for Junior would be available in Mexico.

Galindo-Munoz is the domestic partner of the children's mother, Anna Flores. Galindo-Munoz stated that he and Flores have been in a relationship for fourteen years. In April 2012, Galindo-Munoz was arrested for assaulting Flores and restricted by court order from contacting her for six months. They lived separately for fifteen months. During this time, Galindo-Munoz visited the children, who were living with their mother. Galindo-Munoz said that he and Flores reconciled in September 2013. Flores did not testify at the hearing. Galindo-Munoz explained that she was afraid to testify because of her immigration status and because she was at work. Flores also did not submit an affidavit or letter verifying their reunion.

Galindo-Munoz testified that if he returned to Mexico, he would live in his hometown and return to agricultural work, but that this would not allow him to support Junior's medical needs. Junior also testified. He stated that he has occasional pain and is doing well in school. Junior said that he lived in the same house as his siblings and mom and dad. He testified that his mother worked as a lawyer.

*The Immigration Judge's Findings.* The immigration judge found that, "[o]verall, [Galindo-Munoz's] testimony was consistent, plausible, and persuasive." Galindo-Munoz met the ten-year continuous physical presence requirement and had no disqualifying criminal convictions.

Nonetheless, the judge found that Galindo-Munoz failed to establish good moral character, or that his removal would result in "exceptional and extremely unusual hardship" to his qualifying relatives. As to good moral character, the immigration judge noted that although Galindo-Munoz's six-month "diversion" was not dispositive,

> [t]his is essentially a question of proof. We have [Galindo-Munoz's] self-serving testimony that he has reconciled with the mother of his children, and they live together. His son also testified that his parents live together. However, there is only one person who could tell the Court if [Galindo-Munoz] and Ms. Flores really got back together, and how long they were apart, and the actual circumstances of their separation. That person is Ms. Flores. She chose to not testify, and there is no affidavit or letter from her in the record, explaining the events that gave rise to the separation and the incident that led to [Galindo-Munoz's] conviction. [Galindo-Munoz] did testify that he accused her of seeing another man while they were separated. He admitted touching her during the incident, and there was testimony that he threw a laptop. [Galindo-Munoz] also admitted that this altercation took place in front of Ms. Flores's fourteen-year-old son. Her testimony would have gone far to show if he now is in better control of his temper, among other issues.

As for exceptional and extremely unusual hardship, the immigration judge found that, despite Junior's cleft palate, "[o]n this record" Galindo-Munoz had failed to show that his removal from the United States would be an extreme hardship to Junior for several reasons.

First, it was "not entirely clear" that Junior would actually accompany Galindo-Munoz to Mexico. Galindo-Munoz gave inconsistent testimony on this point: In 2013, Galindo-Munoz stated on his cancellation application that the children would not go with him. In 2016, Galindo-Munoz testified that they would go with him because Galindo-Munoz wanted to keep the family together. The immigration judge felt that Flores's testimony "would have been extremely helpful" to resolve this question, especially since Junior's doctors are in the United States. Furthermore, the immigration judge stressed that Galindo-Munoz did not offer any evidence that Junior would be deprived of comparable medical care if he followed Galindo-Munoz to Mexico.

Second, the record does not suggest that Junior would suffer exceptional and extremely unusual hardship if Galindo-Munoz went to Mexico and Junior remained in the United States. To the contrary, Galindo-Munoz testified that (1) Flores took Junior to his medical appointments during the period of court-ordered separation, (2) Medicaid largely covered Junior's medical bills, and (3) Flores works to support the children.

Accordingly, the immigration judge denied Galindo-Munoz's request for cancellation of removal.

*The Board's Denial of Galindo-Munoz's Appeal.* Galindo-Munoz appealed to the Board. He also filed a motion to reopen, asserting that he had new facts to show the hardship to Junior. DHS filed a motion for summary affirmance. The Board dismissed the appeal, "agree[ing] with the Immigration Judge that, even if credible, [Galindo-Munoz] did not meet his burden of establishing good moral character during the last 10 years . . . ." The Board noted that Galindo-Munoz "was found guilty . . . in the State of Arkansas of 3d degree misdemeanor criminal assault on a family or household member, his children's biological mother; the case was diverted and later dismissed . . . ."

The Board also affirmed the immigration judge's finding that Galindo-Munoz did not meet his burden of establishing an exceptional and extremely unusual hardship to his children at the time of the merits hearing. *Id*. at 88-90. Galindo-Munoz's two younger children did not have any medical problems or compelling learning needs. *Id.* at 89. Galindo-Munoz also "did not sufficiently explain" why he did not have corroborating evidence from Flores, who also does not have lawful status in this country and is a Mexican native as well, to support his claim that she and the children would not remain in the United States. *Id.* Moreover, if the children remained in the United States with Flores, they would continue receiving Medicaid. *See id.* Nor had Galindo-

Munoz shown that his children could not receive or afford medical care in Mexico. *Id.* These findings of fact were not clearly erroneous and defeated a showing of unusual hardship. *Id.* The Board therefore affirmed the immigration judge's finding that Galindo-Munoz was not entitled to cancellation of removal. *Id.* Galindo-Munoz's appeal of this decision is docketed as No. 18-3338.

The Board construed Galindo-Munoz's motion to reopen to submit additional evidence as a motion to remand and denied it, because the new evidence, a letter from Junior's hospital showing that he had scheduled dental appointments, did not establish the requisite hardship to a qualifying relative. *Id.* at 89-90. Galindo-Munoz also did not demonstrate sufficient hardship based on economic detriment. Although the primary provider for the children, Galindo-Munoz did not show that he could not get a job in Mexico. And Flores works.

*The Board's Denial of Galindo-Munoz's Motion to Reopen.* Following the Board's decision, Galindo-Munoz filed another motion to reopen with the Board and submitted additional evidence. The Board held that Galindo-Munoz had not satisfied the requirements of reopening because Galindo-Munoz failed to attach a new application as required by 8 C.F.R. § 1103.2(c)(1) and the additional evidence was neither material nor previously unavailable. The Board noted specifically that the "new" information regarding Junior's cleft palate, and need for more surgeries, was previously available. *Id.* at 4.

The Board also determined that even with the additional evidence, Galindo-Munoz failed to establish *prima facie* eligibility for cancellation of removal. *Id.* at 4. The Board reiterated that:

> The medical issues experienced by his son were already considered by the Immigration Judge, along with the other evidence both individually and cumulatively. The medical issues are being addressed, and [Galindo-Munoz's] son is receiving medical care through the state of Arkansas. [Galindo-Munoz's] partner has not submitted a statement and did not previously testify or submit a statement. The financial and emotional strain on [Galindo-Munoz's family] are not

substantially beyond that which would ordinarily be faced by children who are the qualifying relatives upon removal of an alien.

*Id.* at 4 (citations omitted). Galindo-Munoz's appeal of this decision is docketed as No. 19-3357.

## II.

Because the Board issued its own decision, we treat it "as the final agency determination" and review the immigration judge's reasoning only to the extent the Board has adopted it. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). An alien is eligible for cancellation of removal if he (1) had been continuously present in the United States during the ten-year period preceding the application; (2) has been a person of good moral character during that time; (3) has not been convicted of certain qualifying convictions, and (4) his removal would result in "exceptional and extremely unusual hardship" to a qualifying relative such as a spouse or child who is a United States citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1).

*No. 18-3338.* The Board denied Galindo-Munoz's cancellation of removal application because he failed to (1) establish good moral character, and (2) demonstrate an exceptional and extremely unusual hardship. This court generally lacks jurisdiction to review the agency's hardship determinations. *See* 8 U.S.C. § 1252(a)(2)(B)(i) (stating that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b").[1] As outlined above, the immigration judge considered the circumstances and concluded that the hardship to Galindo-Munoz's children upon his removal did not rise to the level of "exceptional and extremely unusual." Reviewing the immigration judge's findings of fact for clear error, and its discretionary determination de novo, the Board agreed. We therefore lack jurisdiction to review

---

[1] This court recognizes two exceptions to that jurisdictional bar. *See Aburto-Rocha v. Mukasey*, 535 F.3d 500, 502 (6th Cir. 2008). First, we can review "constitutional claims or questions of law." *Id.* (quoting 8 U.S.C § 1252(a)(2)(D) Second, we have jurisdiction over non-discretionary decisions, even when they "underlie determinations that are ultimately discretionary." *Id.* (quoting *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004)). Galindo-Munoz does not contend that either exception applies.

the matter. *See Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) (noting that "the BIA's hardship decision is a discretionary one and that, as a result, it generally lies beyond our jurisdiction"); *see also Ettienne v. Holder*, 659 F.3d 513, 518 (6th Cir. 2011) ("Review that required a tallying of hardships would amount to second-guessing the agency's weighing of factors, an endeavor that we have repeatedly recognized as beyond our jurisdiction.").

Furthermore, because the Board denied Galindo-Munoz's motion to remand on the ground that he failed to submit sufficient evidence to establish the requisite hardship to his children, we lack jurisdiction to review the denial of that motion as well. *See Ortiz-Cervantes v. Holder*, 596 F. App'x 429, 433 (6th Cir. 2015). In any event, Galindo-Munoz has not challenged these decisions on appeal. As a result, he has forfeited any challenge to the Board's decision in No. 18-3338. *See Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010). We therefore dismiss the petition for review.

*No. 19-3357.* The Board denied Galindo-Munoz's motion to reopen because (1) he did not meet the requirements for reopening since he failed to present previously unavailable and material information and did not submit a new relief application, and (2) the limited additional evidence provided did not demonstrate the requisite hardship under § 1229b(b)(1)(D).

Again, we lack jurisdiction to review the hardship question. Galindo-Munoz does not argue that any exception to the jurisdictional bar applies. *See Aburto-Rocha*, 535 F.3d at 503. Instead, he complains that the Board did not address his additional good character evidence and did not make "any attempt to consider the medical issues in light of the new evidence" he provided.

But the Board indicated that the additional medical evidence did not raise a new hardship, and when considered with the evidence of record, did not establish a *prima facie* case for cancellation of removal. We "lack jurisdiction to review the denial of a motion to reopen or

remand in a cancellation of removal case, unless the motion raised a new hardship ground not decided in the original decision." *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 316 (6th Cir. 2018) (holding that the court had jurisdiction over the petitioner's motion to reopen because it described a potential hardship to a different child than addressed in his original application). Contrary to Galindo-Munoz's suggestion, the Board was not required to explicitly address every document submitted. *See Stserba v. Holder*, 646 F.3d 964, 978 (6th Cir. 2011). Finally, the Board's failure to address additional good-moral-character evidence was unnecessary because Galindo-Munoz's failure to establish the requisite hardship was dispositive of his eligibility for cancellation of removal. *See Reyes v. Holder*, 410 F. App'x 935, 940 (6th Cir. 2011) (both good moral character and an exceptional and extremely unusual hardship are required for cancellation of removal).

Given this conclusion, we need not, and therefore do not, reach the Board's other ground for denying the motion to reopen. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule, courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Ortiz-Cervantes*, 596 F. App'x at 433.

**III.**

For these reasons, we **DISMISS** the petitions for review in both appeals.