NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0326n.06

Case No. 20-4295

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jul 12, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ABRAHAM CONTRERAS-SANCHEZ, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | ON PETITION FOR |
| v. | ) | REVIEW FROM THE |
| | ) | UNITED STATES BOARD |
| MERRICK B. GARLAND, Attorney General, | ) | OF IMMIGRATION |
| | ) | APPEALS |
| *Respondent.* | ) | |
| | ) | O P I N I O N |

Before: SUTTON, Chief Judge; SUHRHEINRICH and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Abraham Contreras-Sanchez appeals the Immigration Judge's decision to deny his cancellation of removal request and the Board of Immigration Appeals' decision to dismiss his appeal. As far as Contreras disputes factual findings below, we **DISMISS** for lack of jurisdiction. On the remaining claims, we **DENY** the petition for review.

## I. Background

Abraham Contreras-Sanchez entered the United States illegally in 2001. After he pled guilty to driving while intoxicated and failing to stop at the scene of a personal-injury accident, the government began removal proceedings. The government charged Contreras with removability as a noncitizen present in the

United States without admission or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Represented by counsel, Contreras admitted removability but applied for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1).

Cancellation of removal is halting a removal and adjusting an immigrant's status to lawful permanent resident. *Id.* The Attorney General has the power to cancel removal[1] when the immigrant meets four criteria: 1) he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding" the cancellation of removal application, 2) he "has been a person of good moral character during such period," 3) he has not been convicted of certain crimes, and 4) he "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* Only the last prong is at issue here.

The Immigration Judge ("IJ") held a hearing on Contreras's motion. Contreras testified that he came to the United States to find employment and that he worked at a restaurant and a furniture company, making about $60,000 a year. His wife Martha also does not have legal status in the country. They have five children who are all United States citizens and range in age from about five to sixteen years old. None of the children has health or educational problems. Contreras is the sole provider for his family.

---

[1] The Attorney General is not required to do so even if the immigrant meets all the criteria. *See Singh v. Rosen*, 984 F.3d 1142, 1147 (6th Cir. 2021).

Contreras and Martha decided that they would move the entire family to Mexico if Contreras were removed. Contreras testified that he believed this would harm his children because they speak little Spanish, and they might struggle to adapt and thus experience bullying. The family plans to live with Contreras's parents in Telixtac, but their home has only two bedrooms and a kitchen. Most difficult, according to Contreras, would be providing for his kids, especially as it pertains to their education, because the school his children would attend is expensive and distant, and his children might have to work in the fields to help the family make ends meet. Along with Contreras's testimony, the IJ also considered Martha's testimony, the testimony of others who supported Contreras, and documentary evidence that included a declaration by proffered expert Professor Todd V. Fletcher detailing the poor state of the Mexican education system and the hardships he expected the Contreras children to face.

The IJ denied Contreras's application for cancellation of removal, granted voluntary departure, and entered an alternative order of removal. After summarizing the relevant law and facts, the IJ found that Contreras met all the requirements for cancellation of removal except for the hardship requirement. He noted that Contreras's children would have diminished educational opportunities, but they would not *lack* education, and diminished educational opportunities alone cannot satisfy the hardship requirement. That the parents were choosing to bring all the children to Mexico with them would create some hardship, the IJ wrote, but not more than other cases in which the immigrant did not show adequate hardship. Finally,

the IJ found that Contreras's assertion that his children speak only English was implausible, expressed his belief that the children would have the necessary fortitude to catch up and flourish in Mexican schools, and noted that the family would have relatives to support their adjustment. As for Professor Fletcher's report, the IJ gave it only some weight because it referenced extra-record documents, may have reused boilerplate language discussing a child named "Christopher," made sweeping generalizations, and ultimately only supported the proposition that education in Mexico is less developed than America's but not completely lacking.

The Board of Immigration Appeals ("BIA") dismissed Contreras's appeal. It agreed that Contreras did not meet the exceptional and extremely unusual hardship standard, noting that none of his children had special medical or educational needs. It also mentioned that the IJ was correct to give minimal weight to Professor Fletcher's report. Though the BIA recognized that moving to Mexico would present some hardship and diminished opportunities, it agreed that it was not an extraordinary hardship. It also noted that, unlike the single mother in *In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (B.I.A. 2002), Contreras had relatives in his home country who could help with the adjustment.

## II. Analysis

The first step here is to determine whether we have jurisdiction to review Contreras's claims. Although circuit courts have jurisdiction to review final orders of removal, 8 U.S.C. § 1252(a)(1), "no court shall have jurisdiction to review," judgments regarding discretionary relief, including cancellation of removal,

8 U.S.C. § 1252(a)(2)(B). The only exception is for "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D). For purposes of this statute, "questions of law" includes "the application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020). And applying the hardship standard to the facts of the case is a mixed question that appellate courts can review, so we have jurisdiction to review the "ultimate hardship conclusion." *Singh*, 984 F.3d at 1145, 1150. Because the BIA's failure to adhere to its own precedent as required by regulation is "non-discretionary error," we also have jurisdiction to review such challenges. *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008); 8 C.F.R. § 1003.1(g). Deciding whether a question is reviewable turns on the substance of the claim, not the label. *Singh*, 984 F.3d at 1149. And "where, as here, the BIA adopts the IJ's decision and supplements that decision with its own comments, we review both opinions." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 293 (6th Cir. 2016) (cleaned up) (quoting *Hachem v. Holder,* 656 F.3d 430, 434 (6th Cir. 2011)).[2]

Contreras begins by arguing that the IJ erred by coming to conclusions contrary to the evidence. He argues that the IJ's conclusion that the children understood enough Spanish to integrate into the Mexican schools was clearly erroneous because it conflicted with the evidence. These are factual determinations

---

[2] We apply de novo review to mixed questions of law and fact when they require legal exposition, and we apply deferential review to mixed questions that deal heavily in factual issues. *Singh*, 984 F.3d at 1154. This kind of mixed question likely calls for "deference to the [BIA]." *Id.* Our circuit has not yet determined the exact level of deference, but as in *Singh*, "we need not choose the proper standard of review" because Contreras will not prevail under any viable standard. *Id.*

that we lack jurisdiction to review, *Singh*, 984 F.3d at 1154–55. And even if we could review this claim, it would not justify relief under any deferential review standard.

Next, Contreras argues that the IJ and the BIA failed to correctly apply its own precedent, specifically *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56 (B.I.A. 2001); *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (B.I.A. 2002); *Recinas*, 23 I. & N. Dec. 467; and *In re J-J-G-*, 27 I. & N. Dec. 808 (B.I.A. 2020).[3] He describes three ways the BIA failed.

First, he argues the BIA read the "exceptional and extremely unusual standard" as requiring something more than loss of economic and educational opportunities, ignoring that the precedents say such hardship is only "generally" insufficient. In essence, he charges the BIA with applying a bright-line rule that automatically excludes all claims based on economic and educational hardship falling short of complete deprivation and destitution. The BIA and the IJ did not apply such a rule. The IJ looked at the evidence "both individually and cumulatively," including the educational challenges (which would be common for children removed from the United States and would not be insurmountable), the availability of education (even though diminished), the health of Contreras's children and their ability to improve their Spanish skills, family assistance available to Contreras in Mexico, "adverse

---

[3] "An agency's interpretation of its own precedents receives considerable deference," so we "confine ourselves to asking whether the BIA reasonably construed and applied its own precedents." *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008). Because the BIA will prevail either way, we need not decide today if *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019), changes how we apply this *Auer*-based standard. *See United States v. Riccardi*, 989 F.3d 476, 484–85 (6th Cir. 2021).

country conditions," Contreras's likely lower wages in Mexico, and the suboptimal size of the housing they will likely live in. (A.R. 62, 67–72.) The BIA likewise acknowledged the hardship that the Contreras children would face, concluding that it was not above and beyond the expected hardship for all children of removed parents.[4]

Second, Contreras asserts that the BIA used the wrong legal standard when comparing his case to *Recinas* because it stated that the mother there had six children when only four were United States citizens.[5] But the BIA was correct that the mother in *Recinas* resided with six children, which was relevant to her ability to support all her children, including those who were United States citizens. *See Recinas*, 23 I. & N. Dec. at 471. And at any rate, the number of children was not the only difference the BIA noted between Recinas and Contreras. Unlike this case, Recinas had no

---

[4] Contreras reads the IJ's opinion as not considering these factors because it stated that the failures of the Mexican educational system were "the entire concern." (A.R. at 71.) But the IJ's statement followed a paragraph explaining that "a lower standard of living, diminished educational opportunities, and poor economic conditions, and adverse county conditions are relevant but insufficient in and of themselves to support a finding of exceptional and extremely unusual hardship." (*Id.* at 70.) So the IJ considered all these hardships, even though Contreras had emphasized the educational difficulties. For this reason, Contreras cannot prevail on his claims that the BIA and IJ failed to consider the cumulative hardship, the loss of housing, and the decreased wages.

[5] He also argues that the BIA failed to consider that Contreras' five children outnumbered Andazola's two children, meaning that Contreras' removal would cause more suffering. *See Andazola*, 23 I. & N. Dec. at 320. But having more United States citizen children than someone else who did not receive cancellation of removal does not bind the BIA to afford relief here.

spousal support and no family support in her home country, and her children lacked knowledge of Spanish.[6]

Finally, Contreras adds that the BIA and IJ were wrong to consider the family's move to Mexico a "choice" even though he thinks that leaving the children in the United States with their mother—also an illegal immigrant—would be infeasible. But the BIA and IJ were right not to speculate about whether the mother would be removed when no removal proceedings were under way. *See In re Calderon-Hernandez*, 25 I. & N. Dec. 885, 886–87 (B.I.A. 2012). Since the mother has the option to remain in the United States, deciding where the children would live is a matter of choice for Contreras and his wife. *Cf. In re Ige*, 20 I. & N. Dec. 880, 886 (B.I.A. 1994) ("[W]e will generally consider the decision to leave the child in the United States to be a matter of personal choice.").

## Conclusion

Because we lack jurisdiction to consider Contreras's factual challenges, and since his legal challenges fail on the merits, we **DISMISS** the petition for review in part and **DENY** it in part.

---

[6] Contreras also asserts that the BIA incorrectly applied *Recinas* because it failed to see his five children's struggle with Spanish as worse than the two children's struggle with Spanish in *Recinas*. This wades back into the issue of the IJ's ruling that Contreras' account of his children's Spanish skills was implausible, a factual determination that we cannot disturb.